

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 29, 2017

**BY ECF**

The Honorable Ronnie Abrams
United States District Court Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Khalil Evans*, 16 Cr. 749 (RA)

Dear Judge Abrams:

    The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for July 5, 2017 at 3:30 p.m. For the reasons explained below, the Government submits that a sentence within the applicable Guidelines Range of 15 to 21 months' incarceration stipulated by the parties in the plea agreement, and also calculated in the PSR, would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**A. Factual Background**

    This case arises from the defendant's participation in a conspiracy to fraudulently obtain merchandise from Apple stores in the United States. The conspiracy involved at least ten co-conspirators in the United States, who collectively perpetrated the scheme dozens of times around the country, including in the Southern District of New York, between April and October 2016, causing at least $358,739.83 in actual losses to Apple. PSR ¶¶ 14-18, 39.

    The conspiracy relied on a sophisticated exploitation of the device used by Apple store employees to process purchases at the stores. This device contains a barcode scanner to ring up items for sale and a magnetic card reader for swiping credit and debit cards, as well as touchscreen input interfaces on both sides of the device. One side of the device is used by the store employee, who can make inputs about the type of transaction, such as whether the customer is paying by cash, credit, or debit card. The other side of the device is presented to the customer, who is asked to input certain information, such as an email address to which a receipt for the transaction can be sent, as well as to sign for a credit card transaction or to input a PIN for a debit card transaction. PSR ¶ 15-16.

    The members of the conspiracy devised a method for accessing and manipulating the employee controls of the device. Typically, one conspirator would express a desire to purchase several thousand dollars worth of merchandise and present a credit card to an Apple employee,

who would swipe it into the device and wait for the purchase to be approved. The employee would then hand the device over to the conspirator to sign for the transaction. At that point, another co-conspirator would attempt to distract the Apple employee, typically by asking questions about the merchandise. Meanwhile, the original conspirator would access the employee controls on the device and cancel the credit card transaction, then falsely enter into the device that he had paid cash for the merchandise. Other conspirators would typically be nearby to act as lookouts and, in many cases, to prevent detection by closing a nearby cash drawer that would automatically open when the transaction was entered as a cash transaction. The conspirators would then leave the store with the merchandise. PSR ¶ 17.

The defendant, Khalil Evans, participated in the charged conspiracy primarily around the time of its inception in March 2016. During this time period, Evans personally participated in three successful incidents in which he and his co-conspirators obtained a total of $18,438.61 in merchandise from Apple stores. In addition, Evans participated in at least two unsuccessful attempts to obtain merchandise from Apple stores with his co-conspirators. The surveillance video of these incidents indicates that Evans' primarily served as a decoy to distract Apple employees and did not personally manipulate the point of sale device. Although it does not appear that Evans participated in further incidents at Apple stores after March 2016, he continued to maintain contact with his co-conspirators regarding the conspiracy, and traveled with them in connection with it. In October, Evans was arrested with three other co-defendants in a hotel suite in Las Vegas, in which were also found multiple Apple devices and approximately $40,000 in cash representing proceeds of the conspiracy.

### B. The Defendant's Submission

The defendant's sentencing submission asks for a sentence of time served. He argues principally that he played a limited role in the conspiracy and that he is a first-time offender . He also makes some more general criticisms of the factors that go into the Guidelines calculation and argues that a greater term of incarceration would not serve the purposes of general or specific deterrence.

### C. Discussion

The 18 U.S.C. § 3553(a) sentencing factors most applicable here are the nature and circumstances of the offense, the need to provide just punishment and adequate deterrence, and the need to promote respect for the law. These considerations weigh in favor of a sentence within the Guidelines Range.

First, a Guidelines sentence appropriately reflects the nature and seriousness of the defendant's offense. The defendant emphasizes his "limited role in the offense." Deft. Submission 5. But the parties have already taken the defendant's role into account in stipulating to a 4-level minimal role adjustment to his Guidelines Range. The mere fact that the defendant's role was minimal does not mean that he bears no responsibility for the foreseeable acts of his fellow-conspirators. The very nature of a criminal conspiracy is that, by combining the efforts of multiple partners in crime, it inflicts greater harm than the conspirators could accomplish individually. And, although the defendant did not personally participate in a great number of incidents, he was

involved from the beginning of the conspiracy in March 2016 right up until it was cut short in October 2016 by the arrest of the defendant and his co-conspirators at a Las Vegas hotel where they were found with some of the proceeds of their criminal enterprise. In short, there is nothing about the facts of this case that would suggest the Guidelines range—to which the defendant agreed at the time of his guilty plea—somehow overstates his culpability.

Additionally, a Guidelines sentence would promote both general and specific deterrence. Here, the defendant makes some general empirical arguments questioning the deterrent value of a longer term of incarceration and the basis for the fraud Guidelines in particular. To be sure, the Court is permitted to disagree with the Sentencing Commission's policy judgments about these matters, after considering those judgments and their reflection in the Guidelines range as its initial benchmark. *United States v. Cavera*, 550 F.3d 180, 192 (2d Cir. 2008) (en banc). But generally speaking, it makes more sense to vary from the Guidelines when something about the facts of a particular case indicates that the Guidelines have misfired. As for more general empirical determinations about issues like deterrence and the seriousness of different offenses, the body best situated to make these judgments is the Sentencing Commission. This is because, as the Supreme Court has explained, the Sentencing Commission's work is "ongoing," and incorporates "advice from prosecutors, defenders, law enforcement groups, civil liberties associations, experts in penology, and others," so it is typically "fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). That includes the concerns about deterrence that the defendant focuses on in his submission. A Guidelines sentence sends a clear message to the defendant and others who may consider such crimes in the future that the consequences will be certain and significant.

Finally, the defendant argues that a Guidelines sentence would create a sentencing disparity with other defendants in this case. The Government acknowledges that this defendant is roughly similarly situated to Mohaamed Kalibar and Ronny Yacoub, both of whom have received sentences of time served, and that a sentence of significantly greater length than the sentences they received could be argued to create a disparity within this case. The defendant here was involved in the conspiracy for a longer time period than Kalibar or Yacoub, though he played a minimal role relative to the activities of that conspiracy over that time period. The net result under the Guidelines is that he has a sentencing range of 15 to 21 months, while both Kalibar and Yacoub had a range of 12 to 18 months. Notwithstanding the arguable disparity, however, the Government respectfully submits that the other 3553(a) factors, taken together, nonetheless militate in favor of a Guidelines sentence here.

**D. Conclusion**

      For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant within the applicable Guidelines range of 15 to 21 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

      Respectfully submitted,

      JOON H. KIM
      Acting United States Attorney for the
      Southern District of New York

By: _____
      Thane Rehn
      Assistant United States Attorney
      (212) 637-2354

cc:     Bradley Henry, Esq. (by ECF)